IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JEFFERY D. SHORES,**

    **Plaintiff,**

vs.                                              Case No. 4:11cv319-WS/WCS

**MR. WILLIAMS, et al.,**

    **Defendants.**

    _____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case on June 29, 2011, by submitting a civil rights complaint, doc. 1. After review of Plaintiff's complaint as required by 28 U.S.C. § 1915A, I entered an order to show cause because Plaintiff did not truthfully complete the complaint form. Doc. 5. On page 5 of the complaint form, question C asks: "Have you initiated other actions . . . in either state or federal court that related to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement . . . ." Doc. 1, p. 5. Plaintiff answered that question by checking "No." *Id.* That is not correct. Plaintiff previously initiated a habeas petition in this court on

June 1, 2011 (case 4:11cv246).  It was transferred to the Middle District on June 14th and was opened in that court as 5:11cv355.

Moreover, Plaintiff failed to mention having filed a prior civil rights case in the Middle District on April 28, 2011, case 5:11cv238.  That case should have been disclosed twice on the complaint form, once as a prior case having been filed and again in answering Question D.  Question D asks: "Have you ever had any actions in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service?  Plaintiff answered "No" but should have listed case 5:11cv238.  That case was dismissed on May 18, 2011, for failing to state a claim as the claims were barred by Heck v. Humphrey.  Doc. 3, case 5:11cv238.  Because Plaintiff would have received notice of that dismissal within approximately 40 days of his initiation of this case, there is no apparent reason for Plaintiff to have omitted it, except that Plaintiff wished to conceal that dismissal.

Plaintiff was given an opportunity to explain these omissions and directed to "present good cause for failing to truthfully answer the questions on the complaint form." Doc. 5.  Plaintiff timely filed a response, doc. 6, titled as reasons for inadvertent error. Doc. 6.  Plaintiff replied, "I assume my error is the result of having to utilize my extremly [sic] noisy environment, in which I had to prepare the complaint form."  Id.  While a noisy environment is hardly good cause, Plaintiff's prior litigation is now known and the Court is able to comply with the screening requirements of § 1915(g).  The case should not be dismissed for Plaintiff's failure to list these cases.

Plaintiff's amended complaint, doc. 7, has now been reviewed. Plaintiff names seven persons as Defendants in this case, although Plaintiff states within the body of the amended complaint that he will not proceed against two of the named Defendants in this case (Richardson and Horton).[1]  Doc. 7, p. 13.

In general, Plaintiff claims that he was required to work in food service by Defendants Williams and Stone despite Plaintiff advising those officers that he is disabled and could not work in food service.  *Id.*, at 7.  Defendant Stone[2] wrote Plaintiff a disciplinary report for refusing to work, in which Plaintiff was found guilty, sentenced to sixty days in disciplinary confinement; Plaintiff says he lost gain time as a result of the disciplinary report.  *Id.*, at 7, 10.  Plaintiff has also named Defendants Kent, Landum, and Wellhausen as Defendants because they did not "correct the situation when it was greived [sic]."  *Id.*, at 7.

Plaintiff alleges that that he suffers from degenerative disc disease which is permanent and substantially limits his "ability to perform major life activities."  *Id.*, at 8. Plaintiff says he presented Defendant Williams with "an altered medical pass" on February 24, 2011.  *Id.*, at 9.  Defendant Williams "consulted medical and was informed only that, that peticular [sic] pass was altered, to [Plaintiff's] knowledge there was no mention of anything further."  *Id.*  Defendant Williams placed Plaintiff in administrative confinement for the altered pass, but did not issue Plaintiff a disciplinary report for the

---

[1] Plaintiff named Defendants Richardson and Horton because they were "neglecting to help" Plaintiff despite knowing of his disabilities.  Doc. 7, p. 7.

[2] At another point in the amended complaint, Plaintiff indicates Defendant Williams was responsible for the disciplinary report.  Doc. 7, p. 10.  It remains unclear as to who issued the disciplinary report, but that is irrelevant.

Case No. 4:11cv319-WS/WCS

pass.  *Id.*  Instead, Plaintiff indicates he was given a disciplinary report for refusing to work and contends Defendant Williams is "directly responsible."  *Id.*, at 10.

Plaintiff alleges that Defendant Williams called Defendant Stone to discuss the issue of the altered pass, and Plaintiff said he attempted to inform Defendant Stone "of the law violations a D.R. would cause."  Defendant Stone told Plaintiff to shut up, which Plaintiff contends violates his "freedom to speak."  *Id.*, at 10.  Defendant Stone tried to "coax [Plaintiff] into wiping tables" but Plaintiff said he could not do so and the disciplinary report was issued.  *Id.*  Plaintiff contends both Defendant Stone and Williams violated his due process rights by not contacting medical for approval for Plaintiff to work.  *Id.*, at 10-11.

Plaintiff claims that on February 22, 2011, he met with Defendant Kent to be assigned a job.  *Id.*, at 11.  Plaintiff alleges that he "tried to explain [his] medical condition" but could not produce a medical pass for Defendant Kent.  *Id.*  Plaintiff tried to say that it was lost or misplaced by confinement officers, at which point, Defendant Kent cut him off and assigned Plaintiff to work in food service.  *Id.*  Plaintiff claims when he protested that job assignment, he was threatened with a disciplinary report.  *Id.*

Plaintiff also seeks to hold Defendant Kent liable for not overturning the disciplinary report.  *Id.*, at 12.  Plaintiff contends that "with or without a pass" he should "not be punished for refusing to work" as that violates the Eighth and Fourteenth Amendments.  *Id.*

Plaintiff attempts to bring the same claim as he presented against Defendant Kent against Defendants Landrum and Wellhausen.  Plaintiff contends that his grievance should have been approved and the disciplinary report overturned.  *Id.*, at 12.

Case No. 4:11cv319-WS/WCS

Attached to Plaintiff's amended complaint is the disciplinary report issued to him on March 4, 2011.  Doc. 7, p. 25.  The report stated that when Plaintiff arrived in food service for work, he stated, "I do not work and will not work."  *Id.*  The report from the disciplinary hearing indicates Plaintiff entered a guilty plea and was found guilty.  *Id.*, at 26.  It reveals that Plaintiff was given 60 days in disciplinary confinement, but the report does not reflect that Plaintiff had gain time forfeited.

In Plaintiff's grievance to the warden, Plaintiff complains that he had to request another medical pass be given to him, and states it was given to him three days after the disciplinary report was issued.  *Id.*, at 27.  The response from Defendants Kent and Landrum notes that at the time of the disciplinary report on February 22, 2011, Plaintiff did not have a pass restricting him from a Food Service work assignment.  *Id.*, at 28. Plaintiff was put in administrative confinement on February 24th for having the "altered Medical Pass."  *Id.*  Plaintiff was returned to food service on March 3rd, but on March 4th he received the disciplinary report for refusing to work.  *Id.*  The appeal was denied, finding that at "no time did [Plaintiff] state that [he] had a medical issue that would hinder [him] from the Food Service assignment."  *Id.*

Plaintiff filed an appeal with the Secretary's office and in that appeal, Plaintiff acknowledges that he "altered a medical pass" and stated that he did so "because medical refused to rewrite my pass even though it never should have expired."  *Id.*, at 29.  Plaintiff argued that he never should have received the disciplinary report because he claims he is "disabled."  *Id.*  Plaintiff's appeal was denied by Defendant Wellhausen. *Id.*, at 30.

**Analysis**

If it is true that Plaintiff lost gain time as a result of the disciplinary report as alleged, then this action is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997). Those cases hold that a prisoner's claim which challenges the result of a disciplinary hearing is not cognizable under §1983 if the claim necessarily implies the invalidity of a forfeiture of gain time credits. To bring such a claim, Plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by an executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. Heck, 512 U.S. 477, 114 S.Ct. At 2372. Until that occurs, a claim under § 1983 has not yet arisen. *Id.* at 2373.

To the extent that Plaintiff might *not* have been penalized by the forfeiture of gaintime as he alleged, the claims may be considered. However, the claims lack merit. Plaintiff acknowledges that he presented an "altered" medical pass to prison officials. Plaintiff may believe that his physical condition renders him unable to perform certain types of work, but a health care professional must provide that opinion to relieve Plaintiff from a prison job assignment. Plaintiff's disagreement with the opinion of his medical providers is not a sufficient basis for a § 1983 claim. "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Plaintiff's presentment of an altered pass did not properly excuse Plaintiff from work. At any rate, Plaintiff did not suffer any harm from that action

because he was placed in confinement only and was not issued a disciplinary report for the altered pass.

Plaintiff was, however, issued a disciplinary report for refusing to work. An inmate will not be permitted to refuse the instruction of a correctional officer to work. Security concerns require that inmates follow orders and directions of officers. For Plaintiff to be *excused* from work, he must have been able to present a valid medical pass. Because Plaintiff could not do so, the issuance of a disciplinary report was proper for Plaintiff's refusal to work.

It is the responsibility of health care providers to determine whether an inmate is capable of work, and a correctional officer is not charged with making that determination. Plaintiff improperly refused to work without a valid medical pass, and the issuance of the disciplinary report did not violate Plaintiff's constitutional rights.

Plaintiff's claim that his First Amendment rights were violated also fails to state a claim. Plaintiff contends that when Defendant Stone told Plaintiff to shut up, it violated his "freedom to speak." Again, valid and obvious security concerns require that when a prison official instructs an inmate to stop talking, the inmate must do so.

It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Yet, a prisoner's rights are not absolute. Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); *see also* Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our

penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Inmates clearly retain protections afforded by the First Amendment. Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Nevertheless, First Amendment rights may be limited by many considerations in the prison setting, "including deterrence of crime, rehabilitation of prisoners, and institutional security." Pell, 417 U.S. at 822-823, 94 S.Ct. at 2804; Procunier v. Martinez, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810-11, 40 L.Ed.2d 224. Prisoners, thus, retain only those First Amendment rights that are not inconsistent with their status as prisoners. Shaw, 532 U.S. at 229, 121 S.Ct. at 1479. Prisoners have only a limited right to freedom of speech. A prisoner does not have the right to continue speaking when an officer directs him not to do so, or to say anything the prisoner wants.

Plaintiff fails to allege a viable constitutional claim and leave to amend would not be beneficial. This case should be summarily dismissed under § 1915(e)(2)(B)(ii).

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's amended complaint, doc. 7, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on September 1, 2011.

   S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**